NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORNERSTONE REALTY PARTNERS, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>WILLIAM RABOLLI, et al.,<br><br>     Defendants. | CONSOLIDATED ACTIONS<br><br><br>Civil Action No. 16-2131 (ES) (JAD)<br><br><br>OPINION AND ORDER |
| WILLIAM RABOLLI, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>CORNERSTONE REALTY PARTNERS, INC.,<br><br>     Defendant. | Civil Action No. 15-7393 (ES) (JAD) |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before this Court by way of Plaintiff Cornerstone Realty Partners, Inc's. ("Plaintiff") Motion for Appointment of Receiver to operate and manage and collect the rent of the property owned by Defendants William Rabolli and Terri Rabolli ("Defendants").

I.    BACKGROUND

Plaintiff filed a Complaint on March 22, 2016 in the Superior Court of New Jersey, Division of Chancery to foreclose a mortgage against the property located at 28 Brookside Avenue,

Allendale, New Jersey 07401. (Complaint, ECF No. 1).  The Complaint was removed to the

Federal District Court of New Jersey on April 18, 2016.  (Complaint, ECF No. 1).

On July 10, 2007, Defendants executed a refinance mortgage loan in the original amount

of $395,000.00. (Complaint, ECF No. 1 at 33).  The initial note contract interest rate was at seven

percent (7%). (Id.)  Pursuant to the loan agreement, Defendants were to make a monthly payment

in the amount of $2, 627.94 for interest and principal. (Id.)  To secure payment of the sums due

under the note, a mortgage ("Mortgage") was executed to the original lender and that which was

recorded on July 18, 2007. (Id.)  Ownership of the loan and servicing of the loan was transferred

numerous times. (Id. at 33-34).  In August 2008, Defendants defaulted on the loan.  Cornerstone

Realty Partners, Inc. is the current owner of the Mortgage by assignment pursuant to that certain

assignment of the Mortgage Agreement recorded in Book 01219, page 2161 et seq.  on December

12, 2012 in the Bergen County Clerk's Office (Id.).

Plaintiff alleges that Defendants failed to comply with the terms of the note and Mortgage

held by Plaintiff.  "As a result, the entire debt is due including the unpaid principal amount due on

the Note, and Mortgage, and all unpaid interests and advances, attorney fees and costs." (Id. at

32).   The property at issue consists of a "two-family residential building in which one of the

residential units is leased" by Defendants. (Pl. Dec., ECF No. 9-2, at 2).

On July 19, 2016, Plaintiff filed a motion for the appointment of a receiver.  (Pl. Br., ECF

No. 9).  On August 1, 2016, Defendants filed their opposition to Plaintiff's motion.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 66, "a court may, in its discretion, appoint a

receiver pendent lite."  Leone Industries v. Associated Packaging, Inc., 795 F. Supp. 117, 120

(D.N.J. 1992) (citing Donavon v. Bierwirth, 680 F.2d 263 (3d Cir. 1982), cert. denied, 459 U.S.

1069 (1982)).  An evidentiary hearing need not be held beforehand when the record discloses

sufficient facts to warrant appointment of a receiver.  Id. at 120 n. 6.  Since receivership is an

extraordinary remedy, it must "be employed with the utmost caution and granted only in cases of

clear necessity to protect plaintiff's interests in the property."  12 Charles Alan Wright, Arthur R.

Miller & Richard L. Marcus, Federal Practice and Procedure, § 1983 (2d ed. 1997); Mintzer v.

Arthur L. Wright & Co., 263 F.2d 823, 824 (3d Cir. 1959) ("[t]he appointment of a receiver is an

equitable remedy of rather drastic nature available at the discretion of the court.").  Appointments

of a receiver are limited to movants who have a real interest in the property held by a defendant.

Mintzer, 263 F.2d at 825.  A court should appoint a receiver only "when the party seeking

receivership has 'an equitable interest in the property to be seized or . . . judgments . . . cannot

otherwise be satisfied."  Leone, 795 F. Supp. at 120 (quoting Piambino v. Bailey, 757 F.2d 1112,

1131 (11th Cir. 1985)).  As a general matter, it is appropriate for a court to appoint a receiver when

the party seeking receivership demonstrates "the imminent danger of property being lost, injured,

diminished in value or squandered, and where legal remedies are inadequate."  Id. (citing

McDermott v. Russell, 523 F. Supp. 347, 352 (E.D. Pa. 1981), aff'd, 722 F.2d 732 (3d Cir.

1983)).

    When considering whether to appoint a receiver in the context of a mortgage foreclosure,

the Court is guided by the following six factors in its exercise of discretion: "the property is

inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee

the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will

be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project

funds by the mortgagor."  Wells Fargo Bank, N.A. v. CCC Atl., LLC, 905 F. Supp. 2d 604, 614,

(D.N.J. 2012). (citing United States v. Berk & Berk, 767 F. Supp. 593, 597 (D.N.J. 1991)).  When

a moving party seeks a receiver who will also manage and operate the mortgaged property pending foreclosure, the courts are particularly cautious in appointing a receiver, and therefore consider whether the evidence demonstrates "something more" than just "the doubtful financial standing" of the defendant and the "inadequacy of the security." Wells Fargo Bank, N.A. v. CCC Atl., LLC, 905 F. Supp. 2d 604, 614 (D.N.J. 2012). The additional factors warranting appointment of a receiver to manage the property may include:

> "the danger of waste[;] delays in foreclosure", Canada Life Assurance Co., 563 F.3d at 845 (internal citation and quotation omitted); the defendant's "fraudulent conduct"; "imminent danger that property [will] be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

Wells Fargo Bank, N.A. 905 F. Supp. 2d at 614 (citing Turabo Shopping Center, Inc., 683 F.2d at 26-27).

A district court "has broad discretion in appointing a receiver, . . . it may consider a host of relevant factors, . . . no one factor is dispositive." Id. (citing Canada Life Assurance Co. v. Alfred R. Lapeter, 563 F.3d 837, 845 (9th Cir. 2009).

## III.   LEGAL DISCUSSION

In the matter at hand, Defendants do not deny that they have failed to make payments or failed to pay taxes on the property. (Def. Opp., ECF No 12 at 9). Defendants, however, argue that Plaintiff failed to meet the six factors to warrant the appointment of a receiver in the context of a foreclosure. (Id. at 6). Defendants argue that a contractual basis does not exist for the appointment of a receiver. "Because neither the Note or mortgage provide a right to receivership by the mortgagee, the equities direct the Court against the appointment of a receiver." (Id. at 7). Furthermore, Defendants argue that the property "is adequate security for the loan". (Id.).

4

According to Defendants they "owe $391,332.80 in principal on the loan" and the "estimated fair market value of the property is $446,791." [1]  (Id.) (citing ECF No. 9-2 ¶16)).   Additionally, Defendants argue that as of "January 2016 the tax assessment value of the property [was] $447,900." (Def. Opp., ECF No 12 at 8).  Defendants contend that where the property is adequate security for the loan, the equities weigh against appointing a receiver. (Id.) Defendants also argue that Plaintiff failed to demonstrate that the Defendants have an "unstable financial status." (Id.) "Because Cornerstone has made no allegations and provided no evidence into the record to suggest that Mr. and Mrs. Rabolli have an unstable financial status, the third factor weighs in against granting the relief sought by Cornerstone." (Id. at 8).  Additionally, Defendants contend that "[t]here is no evidence or argument that the foreclosure will be delayed" or that the Defendants are "misusing the project funds." (Id. at 9) (emphasis removed).   Finally, Defendants argue that the Court should not consider the sixth factor, whether Defendants "have a continued default on the mortgage loans." (Id. at 10).  Defendants cite to the concurrent action they filed against Plaintiff, Rabolli v. Cornerstone Realty Partners, Inc. et.al., No. 15-7393 (ES).  There, Defendants contend that they stopped making payments on the loan because Plaintiff "failed to demonstrate payments were being applied to the loan and refused to provide mortgage statements to the Rabollis as required by the Truth and Lending Act." (Id.).

Furthermore, Defendants argue that the relief sought by Plaintiff requires that Plaintiff meet a higher standard. Defendants cite to Wells Fargo Bank, N.A. v. CCC Atl., LLC, 905 F. Supp. 2d 604, 614 (D.N.J. 2012) in support of their argument that Plaintiff's request that the Court appoint a receiver to take on the management and operations of the property "elevates the burden and

---

[1] In support of Defendants argument that the fair market value of the property in question is $446,791, Defendants cite to the website www.zillow.com.

requires Cornerstone to meet a heightened standard.  (Def. Opp., ECF No. 12 at 11).  Defendants

argue that Plaintiff has failed to demonstrate that the property is in "danger of waste or damage to

the property." (Id. at 12).   In addition, Defendants argue that Plaintiff's proposed order "is

outrageously broad".  Specifically, Defendants identify Paragraphs 1 and 2 of Plaintiff's proposed

order.[2]   (Id. at 14).  Defendants argue that these sections violate New Jersey Statutes and are

contrary to case law. (Id. at 13-17).

Plaintiff argues that this case warrants an appointment of receivership as the evidence

presented by Plaintiff demonstrates that five of the six factors are present.  Plaintiff argues that

Defendants have failed "to make either a payment toward its mortgage loan throughout 2009,

2010, 2011, 2013, 2014, 2015 and 2016, as well as toward any real property taxes which have

accrued against the Property since at least 2009, thereby placing CRP's security interest in

jeopardy." (Pl. Rep. Br., ECF No. 13 at 4).[3]  Plaintiff argues that Defendants have defaulted on

---

[2]  The Receiver Shall not be required to post a bond in connection with such appointment.

   2.      The Receiver shall be empowered to manage, oversee and operate the Mortgaged
           Premises and to take any and all actions necessary to fulfill his/her/its duties,
           including but not limited to the following:
           ......
           b. to commence, prosecute; defend and compromise all legal proceedings; pending
           or otherwise necessary for the protection and/or preservation of the Mortgaged
           Premises and/or to recover possession of the whole or any part thereof... and for
           removal of any tenant, subtenant and/or occupant in possession of any part of the
           Mortgaged Premises......
           f.        to impose upon and collect from the tenants and occupants unpaid
           obligations or any special assessments necessary to pay the expenses of operating
           the Mortgaged Premises.

(Def. Opp., ECF No. 12 at 14).
[3] Based on the parties' statements, it is unclear when the mortgage went into default.  Plaintiff
argues that the mortgage went into default in 2012.  However, Plaintiff also points out that
Defendants failed to make payments since 2009.

the mortgage by failing to make payments "required by the Mortgage and associated loan documents since September, 2012". (Pl. Dec., ECF No. 9-2, at 2).

In addition, Plaintiff argues that the "market value of the Property, as represented by Rabolli in the opposition brief, is substantially less that the amount currently due on CRP's security interest in the Property." (Pl. Rep. Br., ECF No. 13 at 5). Plaintiff contends that Defendants now owe $391,332.80 in principal to Plaintiff. In addition, Plaintiff alleges Defendants owe "(b) accrued and unpaid interest from April, 2012 at the rate of 7% per annum; (c) late charges; (d) an escrow deficiency; and (e) attorney's fees and expenses." (Pl. Dec., ECF No. 9-2, at 4). According to Plaintiff, the amount currently due on CRP's security interest in the Property is approximately $611,748.65. (Pl. Rep. Br., ECF No. 13 at 5). Furthermore, the "outstanding Tax Sale Certificate against the property" is in excess of $50,000.00. (Id.). Plaintiff contends that there is a showing of unstable financial status "by reason of admissions made that Rabolli has made no payment toward the mortgage loan since September, 2012 or toward any real estate taxes for the Property since at least 2009." (Id.) Plaintiff contends that there is evidence of misuse of proceeds as Defendants acknowledge "collecting rent on the Property while not applying said rents to payment of the mortgage loan or accrued real estate taxes." (Id.) In support of their argument, Plaintiff cites to Plaintiff's request for admissions. There, Defendants admit to "receiving payment from a tenant of the separate rental unit in the property" for a portion of 2011, and the years 2012 through 2016. (Pl. Ex. D., ECF No. 9-6, at 5-6). Plaintiff states that the current tenant is paying $1300 per month and that the "fair market rental value" of the rental unit is approximately $1500 monthly. (Pl. Dec., ECF No. 9-2, at 5). Finally, Plaintiff contends that Defendants have attempted to delay the foreclosure proceedings. (Pl. Rep. Br., ECF No. 13 at 6).

## IV.   ANALYSIS

The Court finds that Plaintiff has established that appointment of a receiver is warranted at this time. Plaintiff has met five of the six factors in <u>Wells Fargo Bank, N.A. v. CCC Atl., LLC,</u> 905 F. Supp. 2d 604, (D.N.J. 2012). The record demonstrates that Plaintiff has an interest in the property as the holder of the Mortgage. (Complaint, ECF No. 1, at 33-34).

With respect to whether the property is inadequate security for the loan, the Court finds that appointing a receiver is necessary to protect Plaintiff's interest. Defendants admitted in their responses to Plaintiff's request for admissions that they have not made payments "of principal and interest pursuant to the Mortgage loan" from 2009 through 2011 and 2013 through 2016.[4] (Pl. Ex. D, ECF No. 9-6, at 9, 10). The amount due on Plaintiff's security interest in the Property is approximately $611,748.65, which far exceeds the value of the property, even by Defendant's analysis. (Pl. Rep. Br., ECF No. 13 at 5). According to Defendants, the estimated fair market value of the property is $446, 791. (Def. Opp., ECF No 12 at 7). Furthermore, Plaintiff points out that the original tax certificate against the property, in the amount of $10,267.77, is now in excess over $50,000. (<u>Id.</u>) While Defendants argue that they stopped making payments on the loan because Plaintiff "failed to demonstrate payments were being applied to the loan and refused to provide mortgage statements to the Rabollis as required by the Truth and Lending Act," they do not contest that they failed to make any efforts to satisfy its obligations under the loan. Additionally, and most importantly for the purposes of this motion, Defendants state no legitimate reason for failing to pay taxes on the property since 2012. (Def. Opp., ECF No 12 at 10). Should the holder of the tax certificate foreclose and receive a judgment prior to the Plaintiff herein, the

---

[4] The Court notes that Defendants indicated they made some payments in 2012. (Pl. Ex. D, ECF No. 9-6, at 9).

Plaintiff's security will be further diminished.[5]   These findings all demonstrate the "imminent danger of property being lost, injured, diminished in value or squandered." Leone, 795 F. Supp. at 120.

Furthermore, the evidence demonstrates a continued default of the mortgagor.  As discussed above, Defendants have made no sustained effort to pay a portion of the mortgage and no apparent effort to pay the taxes on the property.  Additionally, the concurrent proceeding brought by the Defendants, Rabolli v. Cornerstone Realty Partners, Inc. et.al., No. 15-7393 (ES) demonstrates, for the purpose of this motion, that this foreclosure action will probably be further delayed.

While it is unclear that Defendants have an unstable financial status and or may be misusing the funds, it is clear that Defendants have been collecting rent for the property in question for a portion of 2011, and the years 2012 through 2016 and that the taxes on the property have not been paid since 2009. (Pl. Ex. D., ECF No. 9-6, at 5-6) (Pl. Rep. Br., ECF No. 13 at 5).  Additionally, Defendants have been in default since 2012 with no showing that they will begin to pay the mortgage any time soon. (Pl. Dec., ECF No. 9-2, at 4).  Defendants have provided no reason why they cannot or should not dedicate some portion of the rents to the tax obligation.

The Court agrees, however, that the order proposed by Plaintiff is excessively broad. Therefore, the Court appointed receiver will be limited to collecting the rent and paying the real estate taxes.  The proposed order shall provide that the receiver shall collect and apply the rents to the tax obligation.  Seventy-five percent (75%) of the rental income will be allocated to paying the back taxes on the property.  Twenty-five percent (25%) of the rental income will be held in escrow

---

[5] The Plaintiff has not discussed whether the holder of the tax sale certificate will, if successful at a tax foreclosure prior in time to Plaintiff's anticipated judgment, be in priority to the Plaintiff.  If so, this truly diminishes Plaintiff's security.

by the rent receiver for the purposes of the receiver's fees and repairs to the premises.  Defendants shall apply to the receiver to utilize those funds for the upkeep and repair to the building and the tenant's property as may be provided for under any leasehold interest.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Appoint a Receiver (ECF No. 9) is hereby **GRANTED** in part.

(1) On or before April 3, 2017, Plaintiff shall serve on the Court and Defendants a proposed order and an affidavit or declaration setting forth in detail the name and qualifications of Plaintiff's proposed receiver; and

(2) On or before April 24, 2017, Defendants shall serve on the Court and Plaintiff objections, if any, to Plaintiff's proposed order and the proposed receiver; and

(3) A hearing concerning the proposed receiver and receivership order shall be held on May 8, 2017 at 11 am in Courtroom 2D, unless Defendants notify the Court that it has no objections to Plaintiff's proposed Order and affidavit.

**SO ORDERED**

_____  3/17/17
**JOSEPH A. DICKSON, U.S.M.J.**

cc:     Hon. Esther Salas, U.S.D.J.

10